UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| JEANINE HILL,<br><br>Plaintiff,<br><br>v.<br><br>TOTAL EVENT SOLUTIONS, INC.,<br>and ALISON MURPHY,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 1:25-cv-00409-MSM-PAS<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

Mary S. McElroy, United States District Judge.

Before the Court is the plaintiff, Jeanine Hill's, Motion to Dismiss Defendants' Counterclaim.  (ECF No. 19.)  Ms. Hill seeks to bring this suit as part of a class of promotional workers.  She alleges that the defendants, Total Event Solutions, Inc. ("TES"), and its owner, Alison Murphy (jointly "Defendants"), violated the Fair Labor Standards Act ("FLSA") and the wage laws of several states by misclassifying her as an independent contractor and failing to pay her earned wages, including overtime. (ECF No. 16.)  The defendants counterclaimed for contractual indemnification related to the costs of litigation.  (ECF No. 18.)  For the following reasons, the Plaintiff's Motion is GRANTED.  (ECF No. 19.)

## I.    BACKGROUND

TES is a Rhode Island home-based event staffing service created by Alison Murphy as a part-time, semi-seasonal business.  (ECF No. 20 at 1.)  TES connects

brands with brand ambassadors for events, primarily at two state fairs in New York and Massachusetts. *Id.* Jeanine Hill is an individual who resides in New York City and that worked for TES as an "independent contractor" in New York, Delaware, and Massachusetts until October 2, 2022. (ECF No. 16 at 5.) Each of the TES promotional workers signed an "Independent Contractor Agreement" ("ICA") for each event they worked. (ECF No. 19 at 1.) The ICA included a Rhode Island choice of law provision. (ECF No. 16 at 5.) The ICA also included an indemnity clause which provides:

> Contractor agrees to indemnify and hold harmless Company and its officers, directors, agents and employees from and against all claims, demands, liabilities, damages, losses, allegations, causes of action and lawsuits (including the payment of reasonable attorneys' fees) (except those resulting from the sole negligence of Agency) caused by, arising out of, or resulting from any . . . services provided by Contractor hereunder or in connection with this Agreement and/or failure of Contractor or those acting under it to conform to the statutes, ordinances, regulations or other requirements of any governmental authority in connection with Contractor's performance of the services set forth and/or contingent to this Agreement.

(ECF No. 20 at 2–3.) The Defendants, relying on the ICA, argue that they are entitled to contractual indemnification for the costs arising from this litigation. (ECF No. 18.)

## II.    STANDARD OF REVIEW

As in a motion to dismiss a complaint, when considering a motion to dismiss a counterclaim under Fed. R. Civ. P. 12(b)(6), the Court must determine whether the counterclaim states a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Court must take all the well pled facts and see if they "justify recovery on any cognizable theory." *Martin v. Applied Cellular Tech.*, Inc., 284 F.3d 1, 6 (1st Cir. 2002).

2

## III.    DISCUSSION

### A.    The Applicability of the Indemnity Clause to Costs Arising from this Case

The Court must first determine whether the indemnity clause in the ICA plausibly covers Ms. Hill's instant suit alleging independent contractor misclassification, failure to pay overtime, and failure to timely pay wages under the FLSA and Rhode Island and New York state law.  Under Rhode Island law "indemnification provisions are to be strictly construed against the party asserting a right of indemnification." *Sansone v. Morton Mach. Works, Inc.*, 957 A.2d 386, 393 (R.I. 2008); *see Gordon v. Campanella Corp.*, 311 A.2d 844, 849–50 (R.I. 1973); *Caruso v. Omni Hotels Mgmt. Corp.*, 61 F.4th 215, 220 (1st Cir. 2023).

The Defendants argue that Ms. Hill's claims fall within the scope of the indemnity clause because they "arise" or "result" from the services provided to them. (ECF No. 20 at 4.)  Several courts have interpreted similar indemnity provisions in wage and hour suits where defendants argued that an indemnity provision covered the litigation because it arose out of the services provided by the plaintiffs.  For example, in *Casias v. Distribution Mgmt. Corp.*, the court interpreted an indemnity provision seeking to indemnify the drafter "from and against any claims, damages, losses or expenses, including reasonable attorneys' fees caused directly or indirectly by or arising out of the performance or failure of performance of this Agreement . . . ."  No. 1:11-CV-00874 MV/RHS, 2012 WL 4511376, at *5 (D.N.M. Sept. 28, 2012). Construing the indemnification clause narrowly, the court found that the clause only

applied to losses arising out of plaintiffs' actions, and that plaintiffs' FLSA claim alleged a loss arising from the defendant's actions. *Id.*

Likewise, in *Fernandez v. Kinray, Inc.*, relying on the persuasive authority of other courts' interpretations of indemnity claims, the court also found that it was the actions of *defendants* that were at issue in a wage and hour suit where the provision required plaintiffs to indemnify for costs "arising as a result of . . . the performance of services under the Agreement." *See* No. 13CV4938ARRSMG, 2014 WL 12778829, at *4 (E.D.N.Y. Feb. 5, 2014) (collecting cases).

The Defendants respond by arguing that *Spellman v. American Eagle Express, Inc.*, 680 F. Supp. 2d 188, 189 (D.D.C. 2010), is the more applicable case. (ECF No. 20 at 4.) In that case, the district court found it plausible that "Plaintiffs . . . agreed to indemnify Defendant for any 'action' against Defendant 'arising out of or in connection with' Plaintiffs' 'obligations under this Agreement[,]'" which included working for "a liquidated fee amount." *Spellman*, 680 F. Supp. 2d at 189, 191. However, since *Spellman*, several courts have distinguished or expressly refused to follow its reasoning, including the *Casias* court.

The *Casias* court noted that even if *Spellman* were not distinguishable based on the language of the indemnity provisions at issue, that court was "forced to engage in mental gymnastics to characterize the loss as one arising from the plaintiffs' purported contractual obligation to work for a liquidated fee, when in fact the loss much more directly arose out of the defendant's alleged violation of its statutory obligations under the FLSA." *Casias*, 2012 WL 4511376, at *7. Thus, it was the

defendant's payment obligation that was at issue, not the plaintiffs' services. *Id.* Even "a meritless lawsuit brought by independent contractors to obtain wages to which they were not entitled ... could not, by definition, arise from the Plaintiffs' performance of services under the contract." *Yaw Adu Poku*, 2013 WL 5937414, at *2; *see Fernandez*, 2014 WL 12778829, at *5. Providing a "more extreme example," if a plaintiff sued their employer for false imprisonment and lost, such a claim would still not "reasonably be said to arise from Plaintiffs' performance of services under the contract." *Yaw Adu Poku*, 2013 WL 5937414, at *2.

This Court agrees that the actions at issue, namely the classification of Ms. Hill as an independent contractor, are those of the Defendants, not Ms. Hill. Therefore, the indemnity clause in the ICA does not cover Ms. Hill's suit and the Defendants' counterclaim must be dismissed.

### B.    FLSA Public Policy Limits on Indemnification in Wage Suits

Ms. Hill also argues that the FLSA, as a matter of public policy, "does not permit employers to seek indemnification from workers pursuing wage or independent contract misclassification claims." (ECF No. 19 at 6.) Although the Court recognizes the substantial public policy interests at issue for a plaintiff's ability to bring claims under the FLSA, the Court has already concluded that the Defendants' Counterclaim fails to state a claim upon which relief can be granted on the ground that the harm alleged does not fall within the scope of the indemnity provision. The Court therefore need not—and does not—decide whether the indemnity provision violates public policy at this time.

## IV.    CONCLUSION

For the foregoing reasons, the Plaintiff's Motion is GRANTED and the Defendants' indemnity counterclaim for costs arising from this litigation is DISMISSED with prejudice.  (ECF No. 19.)

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge

July 21, 2026